UNITED STATES DISTRICT COURT MAGISTRATE JUDGE NOLAN
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE LEFKOW

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 07 CR 692 |
| | ) | |
| v. | ) | Violation: Title 18, United States Code, Sections 371 and 2 |
| | ) | |
| JAY WESTERGAARD, also known as, "J-Bone," and EGIDIJUS VENCKAITIS | ) | FILED |
| | ) | OCT 25 2007 |
| | ) | October 25, 2007 |
| | | MICHAEL W DOBBINS CLERK, U.S. DISTRICT COURT |

THE SPECIAL JUNE 2007 GRAND JURY charges:

1. At times material to this indictment:

   a. United States Citizenship and Immigration Services ("USCIS") was an agency of the United States located within the Department of Homeland Security, a department within the executive branch of the United States. USCIS was responsible for processing and reviewing applications for adjustment of immigration status.

   b. Under the immigration laws, a foreign national who was married to a United States citizen could obtain permanent resident status in the United States, provided that the marriage had been entered into in good faith and that the United States citizen had not entered into the marriage in exchange for something of value, such as money, or for the sole purpose of enabling the foreign national to obtain permanent resident status in the United States.

   c. A foreign national and citizen spouse married inside the United States were required to submit to an interview conducted by USCIS examiners for

purposes of verifying, among other things, that the marriage was legitimate and was not entered into for the sole purpose of obtaining permanent resident status for the foreign national. If a USCIS examiner determined that the marriage had been entered into in exchange for something of value or for the sole purpose of enabling the foreign national to obtain permanent resident status, the foreign national's application for permanent resident status would be denied.

      2.      Beginning no later than on or about July 25, 2006, and continuing to on or about August 18, 2006, at Grayslake, in the Northern District of Illinois, Eastern Division, and elsewhere,

> JAY WESTERGAARD, also known as, "J-Bone," and
> EGIDIJUS VENCKAITIS,

defendants herein, did knowingly conspire with Foreign National A, Foreign National B, each other and others known and unknown to the Grand Jury to commit an offense against the United States, that is:

      a.      to have Foreign National A and Foreign National B knowingly enter into marriages for the purpose of evading a provision of the immigration laws, namely Title 8, United States Code, §§ 1154 and 1186a, which provisions restrict the availability of legal permanent resident status, applied for on the basis of marriage to a United States citizen, to those foreign nationals who have entered into the marriage in good faith and not for the purpose of procuring the foreign national's admission as an immigrant, in violation of Title 8, United States Code, Section 1325(c); and

b.	to knowingly and willfully falsify, conceal, and cover up by a scheme material facts with respect to the circumstances of Foreign National A's marriage and Foreign National B's marriage, each a matter within the jurisdiction of USCIS, an agency within the executive branch of the Government of the United States, namely, that Foreign National A's marriage to a United States citizen and Foreign National B's marriage to a United States citizen would not be entered into in good faith, but would be entered into for the purpose of permitting Foreign National A and Foreign National B to evade the immigration laws of the United States, in violation of Title 18, United States Code, Section 1001(a)(1).

3.	It was part of the conspiracy to have Foreign National A enter into a marriage with a United States citizen so that Foreign National A could reside in the United States as a permanent resident.

4.	It was further part of the conspiracy to have Foreign National B enter into a marriage with a United States citizen so that Foreign National B could reside in the United States as a permanent resident.

5.	It was further part of the conspiracy that on or about July 31, 2006, WESTERGAARD met with Cooperating Individual A and Cooperating Individual B at his residence in Grayslake, Illinois, for the purpose of discussing the terms (including the payment terms) of a fraudulent marriage between Cooperating Individual B and a foreign national.

6.	It was further part of the conspiracy that on or about August 17, 2006, WESTERGAARD met with Undercover Agent A, Cooperating Individual A and

Cooperating Individual B at his residence in Grayslake, Illinois, for the purpose of further discussing the logistics of Cooperating Individual B's fraudulent marriage to a foreign national, and for the further purpose of providing false tax documentation to Cooperating Individual B for use during the fraudulent marriage process. During this meeting, WESTERGAARD also discussed Undercover Agent A's entry into a fraudulent marriage with a foreign national.

7.  It was further part of the conspiracy that on or about August 18, 2006, WESTERGAARD traveled with Undercover Agent A, Cooperating Individual A and Cooperating Individual B to a courthouse located in Skokie, Illinois so that Undercover Agent A and Cooperating Individual B could meet their future spouses, Foreign National A and Foreign National B, for the first time. WESTERGAARD, Undercover Agent A, Cooperating Individual A and Cooperating Individual B met with VENCKAITIS, Foreign National A and Foreign National B at the Skokie courthouse. During this meeting, VENCKAITIS discussed the terms of the fraudulent marriage scheme with both Undercover Agent A and Cooperating Individual B.

8.  It was further part of the conspiracy that on or about August 18, 2006, VENCKAITIS instructed Undercover Agent A and Foreign National A to enter the Skokie courthouse for the purpose of obtaining a marriage license.

9.  It was further part of the conspiracy that on or about August 18, 2006, VENCKAITIS instructed Cooperating Individual B and Foreign National B to enter the Skokie courthouse for the purpose of obtaining a marriage license.

4

10. It was further part of the conspiracy that the defendants did misrepresent, conceal, hide, and cause to be concealed, misrepresented, and hidden, the purposes of the acts done in furtherance of the conspiracy.

### Overt Acts

11. To effect the objects of the conspiracy, defendants WESTERGAARD, VENCKAITIS and their co-conspirators did commit the following overt acts, among others, in the Northern District of Illinois, Eastern Division:

   a. On or about August 17, 2006, WESTERGAARD met with Cooperating Individual A, Cooperating Individual B and Undercover Agent A for the purpose of discussing Cooperating Individual B's entry into a fraudulent marriage.

   b. On or about August 17, 2006, WESTERGAARD provided Cooperating Individual B with false tax documents prepared by WESTERGAARD for Cooperating Individual B's use in connection with her entry into a fraudulent marriage.

   c. On or about August 18, 2006, WESTERGAARD and VENCKAITIS traveled to the Skokie courthouse for the purpose of introducing Foreign National A and Foreign National B to their fake spouses and for the further purpose of acquiring a marriage license for Foreign National A and a marriage license for Foreign National B.

   d. On or about August 18, 2006, Foreign National A obtained a marriage license that would permit Foreign National A to marry Undercover Agent A.

     e. On or about August 18, 2006, Foreign National B obtained a marriage license that would permit Foreign National B to marry Cooperating Individual B.

  All in violation of Title 18, United States Code, Sections 371 and 2.

          A TRUE BILL:

          _____
          FOREPERSON

_____
UNITED STATES ATTORNEY